UNITED STATES of America

v.

Ulysses BARNO.

Crim. No. 1665–71.

United States District Court,
District of Columbia.

March 6, 1972.

———◆———

Charles E. Brookhart, Asst. U. S. Atty., Washington, D. C., for plaintiff.

William B. Clinch, McLean, Va., for defendant.

MEMORANDUM

GASCH, District Judge.

When this case was called for trial, counsel announced that the defendant wished to waive trial by jury and that the evidence received by the Court on the defendant's motion to suppress and to dismiss might be considered by the Court by stipulation as the evidence on trial if the Court denied defendant's motions. Accordingly, the Court heard the following testimony:

Lt. Col. Westenberger, United States Marine Corps, Retired, was called as a witness by the defense. He stated that he is presently employed by the Alcohol and Tobacco Unit of the United States Treasury; that he has examined the sawed-off shotgun in this case. Preliminarily, he stated that he had spent 24 years' service in the Marine Corps; that he is familiar with weapons, ranging from .22 caliber to 152 millimeter; that he has actively collected around two hundred types of weapons which he still owns; that he has been responsible for

setting up the importation criteria under the Gun Control Act; that he is an advisor to the military authorities at Fort Knox; that he has served as a weapons instructor both in the Marine Corps and to Treasury Department law enforcement agents; that he has qualified in both federal and state cases as a firearms expert witness. In examining the sawed-off shotgun which forms the basis of the charge in this indictment he found that the weapon was not operable; he stated that within 15 minutes it could be rendered operable by inserting a firing pin which could be improvised from the use of a ordinary nail of the desired thickness. He further testified that in his experience the firing pin is one of the elements of a shotgun most likely to wear out and is therefore the type of element that one would expect to replace. Such replacements are available either from the manufacturer or from gunsmiths. He added that no reputable gunsmith would, in his opinion, repair a sawed-off shotgun.

The next witness to testify was Detective Joseph C. Quantrell of the Metropolitan Police Department, who stated that he obtained a search warrant for the entire premises 725 — 6th Street, N.W., Washington, D. C., which he described as a three-story single family house occupied by the Barno family. During the course of his execution of the search warrant, which was predicated upon a narcotics buy, while searching various bureaus and other places he found a sawed-off shotgun in a bureau in the room occupied by the defendant Ulysses Barno. He had heard prior to the raid that one of the Barnos possessed a sawed-off shotgun. He found this sawed-off shotgun in the bedroom in which Ulysses Barno was lying on a bed with his small child. The sawed-off shotgun was in a brown paper bag; that upon finding the sawed-off shotgun, the barrel of which was slightly in excess of

12 inches long, he arrested the occupant of this room, the defendant Ulysses Barno.

The defense called one Donald Martin, who stated he was present when the police entered and when asked whether they had a search warrant, stated the police had flashed a paper but said they did not need a search warrant. He was not present when the third-floor door leading to Ulysses Barno's room was opened; he heard banging on the door. He does not know in what position the thumb bolt on Ulysses Barno's door was at the time it was opened. He stated the police made him "leave out" when they were searching.

Defendant was charged in a two-count indictment with possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) and possession of a prohibited weapon, 22 D.C.Code § 3214(a). The latter charge was dismissed by the government, and the case proceeded to trial on the first count of the indictment charging violation of 26 U.S.C. § 5861(d).

The defendant took the stand and stated that he lived at the house leased by his mother at 725—6th Street, N.W.; that he and his wife and baby lived in a room for which he paid his mother money when he had it. He said this contribution of money was for the room and support for himself and his family. On the date charged in the indictment, April 23, 1971, the police having entered the house with a search warrant for the entire premises, got to the door of the room in which he was asleep on the bed with his small child. The defendant stated that officers entered and proceeded to search the bureau where they found the sawed-off H & R shotgun from which the butt had also been removed. Defendant said he was not armed, he made no attempt to escape, and when the officers pointed a gun at him,

**1328**

asked them what this was all about. Defendant even asked for a beer during the course of the search. On cross-examination, the defendant admitted that the sawed-off shotgun in question belonged to him and he knew the gun was in the bureau drawer. The length of the barrel was something in excess of a foot.

The question presented by the defense is two-fold: whether the search warrant obtained by the police is lawful and whether while searching for narcotics under the authority of the search warrant the seizure by the police of the sawed-off shotgun in question was lawful.

▆▆▆▆ The Court finds that there was an adequate basis for the issuance of the search warrant for the entire premises as set forth in the affidavit on the basis of which the United States Magistrate issued the search warrant. Seizure of the prohibited weapon in question by the police while searching for narcotics is a lawful seizure.[1] When such a weapon is subject to be readily restored to an operable condition within the meaning of the Gun Control Act of 1968, 26 U.S.C. § 5845(d), possession of such a weapon is in violation of law. The Court accepts the testimony of Col. Westenberger that this weapon could readily be restored to an operable condition. On this testimony, the Court overrules the defense motions and finds the defendant guilty of the charge of possessing an unregistered firearm. See United States v. 16,179 Molso Italian, .22 Caliber Winlee Derringer Convertible Starter Guns, 314 F.Supp. 179, affirmed, 2 Cir., 443 F.2d 463, cert. denied, 404 U.S. 983, 92 S.Ct. 447, 30 L. Ed.2d 367 (1971). See also United States v. Wright, D.C.Cir., 449 F.2d 1355 (1971), and United States v. Thweatt, 140 U.S.App.D.C. 120, 433 F.2d 1226 (1971).

---

1. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).